UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INCAT CROWTHER AMERICA, L.L.C. | * | CIVIL ACTION NO. 24-1061 |
| | * | |
| VERSUS | * | SECTION: "T"(1) |
| | * | |
| BIRDON AMERICA, INC. | * | JUDGE GREG G. GUIDRY |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is defendant Birdon America, Inc.'s Motion to Compel Incat Crowther America L.L.C. to supplement its Local Rule 26.3 Trade Secrets Identification Statement. (Rec. Doc. 47). Because Incat's Trade Secret Identification Statement fails to comply with the Local Rules, the Motion is GRANTED. Within 21 days, Incat shall produce a supplemental Trade Secrets Identification Statement that identifies the contents or portions of the documents it has cited with language sufficient to allow Birdon and the Court to compare the trade secret to information that is generally known or readily ascertainable and to understand what information is claimed to be the trade secret.

Background

This is a trade secret misappropriation case. Plaintiff Incat also asserts causes of action for unfair trade practices, breach of contract, conversion, open account, and detrimental reliance. Back in 2021, Incat and Birdon began discussing a joint endeavor to pursue a U.S. Coast Guard contract for the Waterways Commerce Cutters project ("WCC Project"), which was expected to result in the purchase of up to 30 new vessels. Birdon would serve as the general contractor, and Incat would contribute its design services. Pursuant to the Teaming Agreement between the parties, any intellectual property rights developed solely by one party would belong exclusively to that party.

1

Incat contends it developed substantial intellectual property for the WCC project "including designs, principal hull dimensions and shape definition, vessel subdivision, deck and space arrangements, exterior styling, 3D renderings, technical bid specifications, engineering solutions, and verified design processes using proprietary ABS spreadsheets, structural calculations, global analysis, hull resistance calculations, and other proprietary information and documents." (Rec. Doc. 1, at 5).

In October 2022, the USCG awarded the project to Birdon, who was tasked with delivering up to 16 river buoy tenders and 11 inland construction tenders. Incat contends that by December 2023, it had, at Birdon's request, completed a significant amount of subcontract services for the WCC project, including providing detailed vessel plans, structural calculations, and system integrations. Yet, Incat alleges, Birdon has failed to pay Incat. And on December 15, 2023, Birdon notified Incat of its decision to no longer pursue a subcontract.

Incat alleges that its intellectual property is integrated into the proposal approved by the USCG but that Birdon is without any authority to use it. It filed suit against Birdon on April 26, 2024. Birdon filed a Motion to Dismiss on June 13, 2024. Among other things, Birdon argues that Incat did not sufficiently allege the existence of a trade secret. On July 11, 2024, Incat sought to file its Trade Secrets Identification Statement as required by Local Rule 26.3. That same day, Birdon moved to stay initial disclosures and discovery pending a ruling on its motion to dismiss. These motions are under submission.

On October 15, 2024, Birdon filed the present Motion to Compel. It argues that Incat's Trade Secrets Identification Statement does not identify the trade secrets with sufficient particularity. It points out that Incat has listed numerous documents without identifying the contents of each document that is a trade secret. Birdon submits that some of the information in

the documents are publicly available specifications required by the USCG. It insists that Incat must be required to identify the specific portions or components of its designs that are its trade secrets or waive its right to rely on any portions or components of those designs later.

Incat contends its statement is sufficient. It has listed numerous documents and it claims that the documents themselves (i.e., the entirety of their contents) constitute the trade secret. It points out that a trade secret may contain publicly available information where the compilation of the information amounts to the trade secret, as in a secret recipe. It complains that Birdon is attempting to litigate the merits of its trade secrets claims and insists that this is not the proper time to do so.

Law and Analysis

1. *Trade Secret Identification*

Because disclosing trade secrets in a publicly filed complaint would destroy their protected status, a plaintiff in a trade secret misappropriation case may not be able to adequately plead the existence of a trade secret. See Torsh, Inc. v. Audio Enhancement Inc., Civ. A. No. 22-2862, 2023 WL 7688583, at *5-6 (E.D. La. Nov. 15, 2023); see generally, The Sedona Conference, Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases, 22 SEDONA CONF. J. 223, 234-40 (2021). Even if the pleading standards can be met, the trade secrets may not be sufficiently identified to make the parties' preservation obligations clear or to define the scope of discovery. Thus, many courts have adopted local rules to provide for early identification of trade secrets.

Our Local Rule 26.3 requires a party asserting misappropriation of trade secrets to file a Trade Secrets Identification Statement before discovery begins. This statement "must be sufficiently particularized to allow the other party to meaningfully compare the asserted trade

secret to information that is generally known or readily ascertainable and to permit the parties and the court to understand what information is claimed to be the trade secret." L.R. 26.3(A). The rule contemplates the attachment of documents "as a supplement to the identification" but not "as a substitute for the identification unless the document itself is claimed to be the trade secret." Id. Even in cases where an entire document constitutes the trade secret, the Rule requires that "the written identification must identify the content in such document or portions thereof in language sufficient to meet the standards herein." Id. "The identification of each asserted trade secret shall be verified under oath or affirmation by the individual or one or more employees or officers of the party asserting trade secret misappropriation." Local Rule 26.3(C).

Prior to our district adopting Local Rule 26.3 on January 1, 2024, the Sedona Conference published a Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases. 22 SEDONA CONF. J. 223 (2021). The Commentary included a proposed Model Local Rule, and each portion of our Local Rule 26.3 quoted above is contained in the Sedona proposal. Thus, the Court finds some of the principles and suggestions of the Commentary instructive here.

> If a plaintiff contends its trade secret is an entire design, then it should identify the entire design, including all aspects of the design, such as dimensions, features, and materials. If the plaintiff contends individual aspects, such as individual dimensions, features, and materials, are additional trade secrets, then it should separately identify each such aspect as an additional trade secret.
> If the plaintiff contends its trade secret is a combination or compilation of information, including information that is generally known, such as a combination of elements or a compilation of data (whether any, some, or all of the individual elements or data are generally or publicly known or not), then it should identify the entire combination or compilation.

Id. at 259. The Commentary also addresses the use of documents in conjunction with the identification of trade secrets, and recommends as follows:

> A trade secret should not be identified exclusively by reference to a document or other item, unless such document (e.g., specification, drawing, or schematic diagram or formula/formulation sheet, computer program (source code), or customer list) or other item (e.g., prototype or model) constitutes the alleged trade secret. . . . If the plaintiff references a document or other item as setting forth more than one trade secret, then where possible the plaintiff should specify which portion of the document or other item addresses each such trade secret. The plaintiff may choose to add document or other-item references to its written identification, but such references do not excuse the plaintiff's obligation to provide a proper identification that meets the reasonable particularity standard.

Id. at 261.

2. *Incat's Trade Secret Identification Statement*

For starters, Incat correctly points out that the present analysis is not a merits determination. The question now is whether the trade secrets have been identified with sufficient particularity, not whether the information identified properly qualifies as a trade secret. Birdon suggests because the documents identified by Incat contain publicly available information, Incat has not properly identified them as trade secrets. It argues that Incat must identify its trade secrets in a way that distinguishes them from publicly available information like the calculation methods, service requirements, and design details that were provided in the USCG Specifications. But the Court will not now assess whether the information Incat has identified amounts to a trade secret. In any event, "[i]t is well established that a compilation or aggregation of otherwise publicly available information constitutes a trade secret." Centurum Information Technology, Inc. v. Geocent, LLC, Civ. A. No. 21-82, 2021 WL 533707, at *13 (E.D. La. Feb. 12, 2021).

The Court now turns to the Trade Secret Identification Statement filed under seal by Incat. The fourteen page document contains a table listing documents which appear[1] to be drawings, models, analysis, graphs, reports, booklets, estimates, and calculations. (Rec. Doc. 27-1). Each document is identified by its title and two different document IDs. There is also a column listing

---

[1] As Birdon points out, the 9,000+ pages of documents cited have not been provided to the Court.

the number of versions. Incat has produced all referenced documents to Birdon. The list does not include narrative description except for the preamble which states that the referenced "trade secret documents" were provided by Incat to Birdon during the bid phase of the project. Id. at 1. There is no indication that the trade secrets have been verified by an officer or employee of Incat.

      Incat insists that its Statement complies with the Local Rule. It seems to argue that its list of documents is sufficiently particular when read in conjunction with its complaint, which identifies the trade secrets as "designs, principal hull dimensions and shape definition, vessel subdivision, deck and space arrangements, exterior styling, 3D renderings, technical bid specifications, engineering solutions, and verified design processes using proprietary ABS spreadsheets, structural calculations, global analysis, hull resistance calculations, and other proprietary information and documents." It argues that its statement "provides a detailed list by file name and document ID the design work product Incat has identified as the intellectual property at issue in its trade secret claim." Apparently, then, Incat claims that each document is a trade secret in its entirety. From there, one might extrapolate that no single portion, data point, formula, or calculation contained in any of the documents constitutes a separate trade secret.

      The trouble is, however, that Incat's Statement must be sufficiently particularized to allow the other party and the Court to understand what information is claimed to be the trade secret. This cannot be left to assumptions. It should not require reference to briefing or pleadings. Indeed, while Incat may contend that the documents it cites are the trade secrets, the Local Rule nonetheless requires that it identify the content of the document or portions thereof in language sufficient to permit the Court and the parties to understand what information is claimed to be the trade secret and to meaningfully compare it against generally known information. Local Rule 26.3(A). If Incat contends that the entirety of each document (i.e. the compilation of information contained therein)

is a trade secret but not more than that, it must say so explicitly in the verified statement. If each document also contains separate trade secrets (e.g., certain design elements, combinations of elements, or methods of calculation) that Incat contends are themselves also protected, Incat must separately identify them with particularity. Additionally, the Statement must be verified under oath.

To be clear, though, the Court finds that Birdon's proposal that Incat go through its cited documents and "separate out Incat's contributions from the contributions of the USCG" is not appropriate or required unless Incat contends that specific portions of the cited documents (e.g., certain design elements) constitute trade secrets on their own. Incat's supplemental statement should make clear whether portions of the documents constitute separate trade secrets or not.

## Conclusion

For the foregoing reasons, Birdon's Motion (Rec. Doc. 47) is GRANTED. Within 21 days, Incat shall produce a supplemental Trade Secrets Identification Statement that identifies the contents or portions of the documents it has cited with language sufficient to allow Birdon and the Court to compare the trade secret to information that is generally known or readily ascertainable and to understand what information is claimed to be the trade secret. To the extent it contends the compilation of information in each document is a trade secret, it shall say so explicitly. If it does not identify portions of the documents as trade secrets, then those separate portions will not be considered trade secrets standing alone. The supplemental Trade Secrets Identification Statement shall be verified under oath as required by Local Rule 26.3(C).

New Orleans, Louisiana, this __4th__ day of November, 2024.

                                                       Janis van Meerveld
                                                  United States Magistrate Judge