UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| INCAT CROWTHER AMERICA, L.L.C. | CIVIL ACTION |
| VERSUS | NO: 24-01061 |
| BIRDON AMERICA, INC. | SECTION: T (1) |

### ORDER AND REASONS

Before the Court is a Partial Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) and 12(b)(7) filed by Defendant Birdon America, Inc. R. Doc. 35. Plaintiff Incat Crowther America, L.L.C., filed a response in opposition. R. Doc. 40. Defendant filed a reply. R. Doc. 41. For the reasons set forth below, the Court will grant the Motion to Dismiss in part and deny in part.

BACKGROUND

Essentially, Defendant is a ship builder who partnered with Plaintiff, a vessel design firm, to secure a contract to construct a fleet of U.S. Coast Guard vessels known as Waterway Commerce Cutters ("WCC"), with the first vessel planned to be in service by 2025. In August 2021, the parties entered into a Teaming Agreement setting forth the responsibilities and obligations of the parties in developing a proposal to secure the contract with the Coast Guard.

The Teaming Agreement purports to address the ownership rights and the use of the parties' intellectual property related to the proposal. It ostensibly recognizes that each party would

1

contribute its existing intellectual property and might create new intellectual property during the proposal development process. The Teaming Agreement also provides that any intellectual property rights created by one party would belong exclusively to that party. While each party would retain ownership of its intellectual property, the Teaming Agreement granted Defendant the ability to use Plaintiff's intellectual property but, allegedly, solely for the purpose of preparing the proposal and negotiating the contract with the Coast Guard. Plaintiff alleges the agreement protected its rights to its intellectual property.[1] The parties also agreed that, if Defendant secured the WCC contract, it would negotiate and act in good faith to enter into a subcontract agreement with Plaintiff for the detailed design and engineering services required within the project.

Defendant used certain portions of Plaintiff's work to secure the contract. For whatever reason, the parties later could not reach an agreement as to the subcontract. Defendant instead proceeded to satisfy the Coast Guard contract allegedly using the proprietary vessel designs and calculations from Plaintiff without authorization to do so. Plaintiff sued Defendant alleging causes of action for trade secret misappropriation under federal and Louisiana state law, violation of Louisiana Unfair Trade Practices and Consumer Protection Law, breach of contract, conversion, open account, and detrimental reliance. The complaint also prayed for injunctive relief.

Defendant moved to dismiss those claims contending that Plaintiff's trade secrets were not identified with sufficient particularity, that Defendant failed to allege Plaintiff misappropriated any

---

[1] Defendant states the Teaming Agreement provides that "as between the parties, all Intellectual Property Rights in the Proposal belong to Birdon." R. Doc. 35-4, p. 6 (citing TA, Section 9.4).

2

trade secrets, and that the conversion claim should be dismissed because Defendant had not dispossessed Plaintiff of any property. Defendant also sought to dismiss Plaintiff's demand for injunctive relief under Rule 12(b)(7) on the basis that the Coast Guard should have been joined as a party.

During the pendency of the motion to dismiss, Plaintiff filed a trade secret disclosure pursuant to Local Rule 26.3.[2] Thereafter, Plaintiff filed a First Amended Complaint incorporating

---

[2] LR 26.3, entitled "Initial Disclosures in Misappropriation of Trade Secret Cases," provides in part as follows:

> Except as otherwise ordered by the court, in addition to the initial disclosures required by FRCP 26(a), a party asserting that any trade secrets have been misappropriated must file under seal a Trade Secrets Identification Statement before trade-secret-related discovery begins.
>
> (A) Identification of Asserted Trade Secrets. A party claiming the existence of a trade secret must, before merits discovery begins (or, subject to paragraph D below with a motion for preliminary relief) identify in writing and serve on the parties, with a level of particularity that is reasonable under the circumstances, each asserted trade secret.
>     The required particularity of this identification differs from what may be adequate in a publicly filed pleading under applicable pleading rules such as FRCP 8. It must be sufficiently particularized to allow the other party to meaningfully compare the asserted trade secret to information that is generally known or readily ascertainable and to permit the parties and the court to understand what information is claimed to be the trade secret.
>     The identification should separate, to the extent practical, distinct trade secrets into numbered paragraphs. A document may be appended as a supplement to the identification but may not be used as a substitute for the identification unless the document itself is claimed to be the trade secret. In cases where an entire document or portions thereof constitute the trade secret, the written identification must identify the content in such document or portions thereof in language sufficient to meet the standards herein.

3

references to the trade secrets identified in R. Doc. 27 and purporting to respond to the deficiencies asserted in Defendant's first motion to dismiss. Defendant filed a renewed motion to dismiss as to the First Amended Complaint at the direction of the Court. R. Doc. 35. This subsequent Motion to Dismiss is now before the Court after having been fully briefed.

LAW and ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

Pursuant to the Defend Trade Secrets Act ("DTSA"), "[a]n owner of a trade secret that is misappropriated may bring a civil action ... if the trade secret is related to a product or service used

4

in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). To succeed on a DTSA claim, a plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).

To plead a plausible claim under the Louisiana Uniform Trade Secrets Act ("LUTSA"), a plaintiff must allege "(a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)).

Defendant asserts that Plaintiff's trade secret claims under the DTSA and LUTSA should be dismissed pursuant to Rule 12(b)(6) for two reasons. First, Defendant contends Plaintiff does not allege the existence of any trade secrets with sufficient particularity. It argues that, under the DTSA, a trade secret is certain information that the owner takes reasonable steps to keep confidential and that derives economic value from not being known by or readily accessible to another person who can obtain economic value from disclosing the information. 18 U.S.C. § 1839; *see also* La. R.S. § 51:1431 ("information, including a formula, pattern, compilation, program, device, method, technique, or process" that derives independent economic value for the same reasons). Defendant contends that, to allege the existence of a protectible trade secret, a plaintiff

5

must allege "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." R. Doc. 35-4, p. 9 (quoting *Am. Biocarbon v. Keating*, Civ. A. No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, Case No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)). "If only broad categories or conclusory statements are alleged, then the pleading does not describe the trade secrets with sufficient particularity." *Id.* (quoting *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, Civ. A. No. 21-1109, 2022 WL 898750, at *6 (E.D. La. Mar. 28, 2022) (citation omitted)). Defendant argues the amended complaint identifies Plaintiff's "intellectual property" using only broad categories and conclusory statements and that referencing its Trade Secret Disclosure Statement does not cure the deficiency.

The amended complaint identifies the following categories of intellectual property: "vessel designs, principal hull dimensions and shape definition, vessel subdivision, deck and space arrangements, exterior styling, 3D renderings, technical bid specifications, engineering solutions, and verified design processes using proprietary ABS spreadsheets, structural calculations, global analysis, hull resistance calculations, hull form and appendage design reports, structural design reports, propulsion system reports, and other proprietary information and documents." The Trade Secrets Statement lists 142 documents with both Plaintiff's and Defendant's document ID numbers.

Defendant argues that neither the amended complaint nor the Statement specifies which

aspects of these generic categories are trade secrets or differentiates these categories from general knowledge or skill in the trade with any particularity. In other words, Defendant contends Plaintiff's allegations are too broad and categorical to plead a trade secret claim.

Plaintiff counters that the amended complaint and the referenced Trade Secrets Disclosure Statement sufficiently identify its trade secrets, which were developed for the WCC project. Plaintiff asserts it has (1) specifically identified each document by name; (2) provided the Defendant's document identifier; and (3) produced each document it contends is a trade secret in the Trade Secret Disclosure Statement, which was identified in the amended complaint. Plaintiff asserts Defendant cannot claim ignorance in this regard.

Plaintiff distinguishes the cases relied upon by Defendant. In *Dong Phuong Bakery, Inc. v. Gemini Society, LLC*, the plaintiff described its alleged trade secrets in its amended counter-claim to include things like social media, merchandising, market research, "comprehensive strategies for new and emerging markets," and "other confidential business information." R. Doc. 40, p. 10. Such vague categories were found to be deficient in stating a trade secret. In *American Biocarbon, LLC v. Keating*, the court also found that plaintiff's description of its trade secrets, which included vague categories such as "studies; know how; [and] scientific research" was insufficient. *Id.*, pp. 10-11.

To state a claim under the DTSA, Plaintiffs must first allege the existence of a "trade secret" as that term is defined by the DTSA. "Trade secret" refers to:

> all forms and types of financial, business, scientific, technical, economic, or

7

> engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Under this definition, the plaintiff must allege that it has taken reasonable measures to keep the information secret and that the information has independent economic value from not being generally known or readily ascertainable. "Despite this broad definition, plaintiffs pursuing DTSA claims must put a finer point on their allegations." *Am. Biocarbon*, 2020 WL 7264459, at *4. "[T]he plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Id.* (quoting *Navigation Holdings, LLC v. Molavi*, 445 F.Supp.3d 69, 75 (N.D. Cal. 2020)).

Plaintiffs bear the burden of identifying the trade secrets and showing that they exist. *SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. 20-2970, 2021 WL 4460522, at *9 (E.D. La. Sept. 29, 2021) (citing *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019)). "This requires that the plaintiff 'clearly refer to tangible trade

secret material' rather than a 'system which potentially qualifies for trade secret protection.'" *Id.* at *10 (quoting *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)). "'Catchall' phrases or mere 'categories' of trade secrets are inadequate." *Id.* (quoting *InteliClear*, 978 F.3d at 658). "However, the Fifth Circuit has never required that trade secrets 'be pled with extreme specificity.'" *Id.* (quoting *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. 18-39, 2020 WL 5745833, at *6 (W.D. Tex. Aug. 3, 2020)).

Here, the Court has reviewed the allegations in the amended complaint and the Trade Secret Disclosure Statement. Although it is not necessary for Plaintiff in its complaint to disclose in detail the allegedly misappropriated trade secrets, it must plead sufficient facts to put Defendant on notice of what is alleged to have been misappropriated. *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019) (citing *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017)). "A trade secret 'is one of the most elusive and difficult concepts in the law to define.'" *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "The elements of a trade secret claim are questions of fact and are usually reserved for the fact finder after all evidence has been presented." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citations omitted). The Court finds this case is distinguishable from those cited by Defendant, namely *Dong Phuong* and *American Biocarbon*, in which the courts found the plaintiffs had alleged overly broad categories of trade secrets and specialized knowledge. Plaintiff here has attempted to set the

boundaries within which its trade secrets lie and to differentiate them from matters of general knowledge. Thus, construing the facts alleged in the amended complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has identified the trade secrets in question with sufficient particularity to put Defendant on notice and, therefore, to maintain its suit for misappropriation under the DTSA and LUTSA.

      Defendant next argues that Plaintiff failed to take reasonable steps to avoid disclosure of its intellectual property to the Coast Guard. It contends that, once the government obtained the unlimited rights to the information, without any restrictive markings, the information was no longer a trade secret. Plaintiff counters that such reasoning does not apply in this case because Plaintiff did not enter any contract with the government and has not so alleged. Even so, Plaintiff notes, Defendant's contention would apply only to information expressly contained and disclosed within the proposal itself. Plaintiff contends that such an argument does not apply to trade secrets outside of the Coast Guard proposal or that were design specifics developed by Plaintiff and provided to Defendant after the Coast Guard accepted Defendant's proposal. Moreover, Plaintiff argues (1) that its trade secrets were developed and refined using Plaintiff's resources to which others did not have access, (2) Plaintiff allowed its intellectual property to be utilized in the project on a limited basis, and (3) Defendant in the Teaming Agreement acknowledged and agreed that Plaintiff's intellectual property was proprietary to Plaintiff and that Plaintiff retained all rights and ownership interests therein. Further, Plaintiff maintains that any attempt to determine if a trade secret was publicly disclosed would go beyond the four-corners of the amended complaint.

The Court agrees that the proposal provided by Defendant to the Coast Guard did not necessarily destroy the existence of all of Plaintiff's alleged trade secrets. The fact-intensive question whether one took reasonable steps to protect a trade secret is best left to the jury. *See Hoover v. Fla. Hydro, Inc.*, 2009 WL 2391220, at *3 (E.D. La. July 31, 2009) (declining to decide this issue on summary judgment, explaining that though evidence had been presented of lack of effort to protect the trade secret, "the ultimate determination must be made at trial"). To make such a determination at this juncture would require factual determinations by the Court, which is not permitted in deciding a Rule 12(b)(6) motion.

Next, Defendant asserts the amended complaint fails to allege that Defendant misappropriated any trade secrets. Defendant argues that, under the DTSA, "misappropriation" results from the "disclosure or use of a trade secret of another without express or implied consent by" someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or was "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." R. Doc. 35-4, p. 9 (quoting 18 U.S.C. § 1839(5)). For LUTSA, misappropriation is defined as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "'disclosure or use of a trade secret of another without express or implied consent' by a person who uses improper means of acquiring the trade secret information." R. Doc. 35-4, p. 9 (quoting La. R.S.

11

51:1431(2); *B & G Crane Serv., L.L.C. v. Duvic*, 2005-1798 (La. App. 1 Cir. 5/5/06), 935 So. 2d 164, 166–67, *writ denied*, 2006-1820 (La. 10/27/06), 939 So. 2d 1280).

Defendant contends the amended complaint fails to allege that any of the documents listed in the Trade Secret Disclosure Statement were improperly disclosed to the Coast Guard because Plaintiff prepared materials for this express purpose. Defendant asserts Plaintiff failed to include any restrictive markings required by federal regulations and, thus, the Coast Guard obtained rights to those materials regardless of which phase of the project was submitted. Defendant also alleges the Teaming Agreement gave it "unfettered rights" to continue using any material, including intellectual property, that was incorporated into the proposal submitted to the Coast Guard.

Plaintiff counters that the Teaming Agreement gave Defendant only limited rights -- solely for the purposes of preparing the proposal and negotiating the potential contract. Plaintiff argues Defendant did not have permission to disclose or use its intellectual property in any form or manner. Plaintiff, rather, states it provided a limited license to Defendant subject to confidentiality parameters and took reasonable steps to protect its secrecy and use. Plaintiff avers Defendant allegedly misappropriated its intellectual property when it continued to use that intellectual property to inform work and build ships pursuant to the contract. Plaintiff asserts it did not give Defendant permission to use such intellectual property post-proposal to implement and manufacture those designs, regardless whether Defendant made modifications to the proprietary calculations and designs. To Plaintiff, even if Defendant had a license to use its intellectual property after the Teaming Agreement terminated, it could only use such information for the

12

purposes of making a proposal for the WCC project. It would not have the right to utilize Plaintiff's intellectual property for the actual design, manufacture, and building of the WCC vessels.

The Court finds the amended complaint adequately alleges misappropriation. The complaint sufficiently alleges Plaintiff took steps to restrict the disclosure and use of its intellectual property and Defendant allegedly exceeded the scope of its limited license to use Plaintiff's intellectual property. Whether that is the case depends on the interpretation of the Teaming Agreement and factual determinations as to which of Plaintiff's trade secrets, if any, were allegedly used outside the scope of the agreement. At this juncture, in ruling on a 12(b)(6) motion, the Court finds the amended complaint sufficiently alleges the "disclosure or use of a trade secret of another without express or implied consent by" someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or was "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5).

Next, Defendant argues that Plaintiff has failed to allege a claim for conversion. Conversion "occurs when an individual (1) acquires possession of an object in an unauthorized manner; (2) removes the object from its original location and places it in another location with the intent to exercise control over the object; (3) the acquired possession is unauthorized; (4) the individual withholds possession from the owner of the object; (5) the object is either altered or destroyed; (6) the object is used improperly; or (7) the individual asserts ownership over the

13

object." *Matrix HVAC, LLC v. Daiken Applied Americas, Inc.*, Civ. A. No. 23-1669, 2023 WL 8701330, *5 (E.D. La. Dec. 15, 2023). Defendant argues that the amended complaint fails to allege any facts that it dispossessed Plaintiff of its intellectual property. Plaintiff counters that interference with its property rights is sufficient to assert a claim for conversion. However, the Court finds Plaintiff's argument unsupported. Conversion is a delictual action that requires deprivation of possession from the owner. "One of the essential elements of a conversion claim is deprivation of possession from the owner." *Matrix HVAC*, 2023 WL 8701330, *5 (citing *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985)). Here, although Plaintiff alleges interference with its ownership rights, the amended complaint fails to allege it was actually deprived of possession of any of its intellectual property. Thus, the Court finds Plaintiff's claim for conversion is deficient.

      Lastly, Defendant contends that Plaintiff's claim for injunctive relief should be dismissed pursuant to Rule 12(b)(7). Defendant contends that any request to enjoin it from performing under the contract with the Coast Guard should be dismissed for failure to join the government as an indispensable party under Fed. R. Civ. P. 19. However, because joinder of the Coast Guard would destroy subject matter jurisdiction, Defendant contends the Court must determine if the government is an indispensable party and whether the litigation can be pursued without the absent party. Plaintiff counters that an injunction is not a separate cause of action but a prayer for relief available to it for trade secret misappropriation claims. Plaintiff argues it requests an injunction permanently enjoining and restraining Defendant from misappropriating and continuing to use

Plaintiff's trade secrets. Plaintiff does not seek an injunction that would prohibit the Coast Guard from receiving the contracted-for completion of the project. Defendant would only be prohibited from using any of Plaintiff's proprietary information without permission to do so. Any failure to complete the project without the use of Plaintiff's intellectual property would be between Defendant and the Coast Guard.

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. Fed. R. Civ. P. 19(a); *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) ("The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of. In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder" (citations omitted)). It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. Fed. R. Civ. P. 19(b); *Pulitzer–Polster*, 784 F.2d at 1308.

The Court finds that any determination as to the availability or extent of any injunctive relief is premature at this point. LUTSA does provide for restraining "the actual or threatened misappropriation" of trade secrets. La. R.S. 51:1432(A) & 1438 -39. The statute also permits a complainant to recover damages, in addition to or in lieu of injunctive relief, for the actual loss caused by the misappropriation of trade secrets. La. R.S. 51:1433. Plaintiff states it has not moved for such relief and Defendant concedes that, if the requested injunction is limited to seeking to

15

prevent Defendant's use of Plaintiff's alleged proprietary data, discovery will show that it is not using Plaintiff's intellectual property to perform under the contract with the Coast Guard. Defendant claims it had to "redo" Plaintiff's "unusable work." The Court will deny Defendant's request at this juncture to strike Plaintiff's request for injunctive relief.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (R. Doc. 35) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim of conversion in Count 5 is DISMISSED WITH PREJUDICE. Otherwise, the Motion to Dismiss is DENIED.

New Orleans, Louisiana, this 19th day of March 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE